1  AMIEL L. WADE (SBN 184312)
   EVAN LIVINGSTONE (SBN 252008)
2  WADE LAW GROUP, A Professional Corporation
   262 E. Main St.
3  Los Gatos, CA 95030
   Direct: (408) 884-4018
4  Tel:   (408) 842-1688
   Fax:   (408) 549-1612
5  Email: elivingstone@wadelitigation.com

6  Attorneys for Plaintiff MATTHEW D. FALLON

7

8                     **UNITED STATES DISTRICT COURT**
9          **FOR THE EASTERN DISTRICT OF CALIFORNIA – FRESNO**

| 10  MATTHEW D. FALLON, a Georgia resident, | **CASE NO.:** |
|---|---|
| 11               Plaintiff, | **COMPLAINT FOR DAMAGES** |
| 12        v. | **1. INTENTIONAL MISREPRESENTATION** |
| 13  ACCORD XPRESS, INC., a California Corporation, and JAGDEEP SINGH DHALIWAL, a California resident | **2. NEGLIGENT MISREPRESENTATION** |
| 14 | **3. BREACH OF CONTRACT** |
| 15               Defendants. | **4. UNJUST ENRICHMENT** **5. CONVERSION** |
| 16 | **DEMAND FOR JURY TRIAL** |

17       Plaintiff MATTHEW D. FALLON ("Plaintiff"), against Defendants ACCORD XPRESS,

18  INC. and JAGDEEP SINGH DHALIWAL ("Defendants") alleges as follows:

19                            **INTRODUCTION**

20       This matter arises from the breach of the Equipment Lease Agreement with Purchase

21  Option ("Equipment Agreement) dated September 17, 2018, between the DF Carriers and

22  Plaintiff.  Defendant ACCORD XPRESS assumed the rights and responsibilities of DF Carriers

23  in the Equipment Agreement.  Plaintiff fully performed under the Equipment Lease and

24  exercised his option to purchase the 2016 Volvo 670, Serial No. 4V4NC9EH9GN935423 (the

25  "Subject Truck").  Plaintiff paid the purchase price for the Subject Truck. Defendants breached

26  the Equipment Lease by failing to provide Plaintiff with valid title to the Subject Truck, despite

27  receipt of payment in full by Plaintiff.  Plaintiff has incurred substantial expenses, including

28  financing a new truck to continue his job as a long-distance truck driver.

1

**JURISDICTION AND VENUE**

2   1.     This litigation is a civil action over which this Court has original diversity

3   jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) based on the diversity of the parties and the

4   amount in controversy.

5   2.     The amount in controversy in this matter exceeds $75,000.

6   3.     Plaintiff is informed and believes, and thereon alleges that the Defendants reside

7   in the County of Fresno, State of California, therefore Venue is proper in the Eastern District of

8   California, Fresno Division, pursuant to 28 U.S.C. § 1391(b)(1) and/or (3).

9

**PARTIES**

10   4.     Plaintiff MATTHEW D. FALLON is an individual who resides in Geneva,

11   Georgia.

12   5.     Upon information and belief, Defendant ACCORD XPRESS INC. is a California

13   corporation with its principal place of business located at 3704 W. Ashcroft Avenue, Fresno, CA

14   93722.

15   6.     Upon information and belief, Defendant JAGDEEP SINGH DHALIWAL is an

16   individual who resides in Fresno County, California.

17

**FACTUAL ALLEGATIONS**

18   7.     Plaintiff is a truck driver who worked for a trucking company located in Romulus,

19   Michigan, DF Carriers, a Department of Transportation freight management company, in 2018.

20   8.     On September 17, 2018, Plaintiff and DF Carriers entered the Equipment Lease

21   for Plaintiff to lease and/or purchase the Subject Truck.  Plaintiff exercised the option to

22   purchase the Truck and paid over $200,000.00. Attached hereto as **Exhibit A** is a true and

23   correct copy of the September 17, 2018, Equipment Lease Agreement with Purchase Option.

24   9.     Plaintiff leased the Subject Truck to own and paid $780 per week for 260 weeks

25   beginning in September 2018.

26   10.    Sometime in 2019 into 2020, DF Carriers was having financial difficulties, and

27   ACCORD XPRESS assumed all of the rights and obligations of DF Carriers under the

28   Equipment Agreement.

---

COMPLAINT FOR DAMAGES

11.     When ACCORD XPRESS assumed DF Carriers' rights and obligations under the Equipment Agreement, Plaintiff asked Defendant DHALIWAL if the Equipment Agreement would be honored by ACCORD XPRESS.  Defendant DHALIWAL responded that ACCORD XPRESS would honor the Equipment Agreement.

12.     In July 2020, relying on Defendant DHALIWAL's representation that ACCORD XPRESS would honor the Equipment Agreement, Plaintiff paid off the remaining balance owed under the Equipment Lease to ACCORD XPRESS in July 2020, a few months before it was due under the Agreement.

13.     Defendants have been obligated to provide Plaintiff with the legal title to the Subject Truck since July 2020.  Plaintiff has consistently contacted Defendants through telephone calls and texts requesting the Legal title to the Subject Truck.

14.     Despite paying off the Subject Truck, when the license plates expired, Plaintiff has been unable to drive the Subject Truck and had to purchase another truck, costing him $55,000.00.  In addition, there was a two-month period. Plaintiff was unable to work, which cost him an additional $40,000.00.  The Subject Truck is useless to him without valid license plates and the legal title.  The Subject Truck remains parked in Plaintiff's yard.  He cannot drive the Subject Truck as a truck driver nor lease it to other drivers.

15.     Defendants acknowledged their obligation and reaffirmed it, yet Defendants have continued to fail to provide Plaintiff with legal title to the Subject Truck.

16.     On or about April 18, 2022, Plaintiff again asked Defendants via email when he would be provided the title to the Subject Truck and Defendant DHALIWAL responded via email, "*I am working on it*."  Defendants' statement that he was "*working on it*" is an admission that Defendants were obligated to provide Plaintiff with legal title to the Subject Truck. Defendants also admitted to breaching the contract by failing to provide Plaintiff with the legal title to the Subject Truck.

17.     Defendants took Plaintiff's money for the Subject Truck, knowing that they would not or could not provide the legal title to the Subject Truck, rendering it useless to Plaintiff.

**FIRST CAUSE OF ACTION**

(**INTENTIONAL MISREPRESENTATION**)

Plaintiff incorporates the allegations in the preceding paragraphs as though fully set forth herein.

18.     Defendants made a material representation to Plaintiff that it would sell a 2016 Volvo 670 Commercial Tractor Truck, Serial No. 4V4NC9EH9GN935423 (hereinafter the "Subject Truck") and provide the legal title to the Subject Truck.

19.     Defendants' material representations to Plaintiff were false.

20.     Defendants knew that Plaintiff was purchasing the Subject Truck to drive as a professional truck driver for pay.

21.     Defendants knew that for Plaintiff to be able to use the Subject Truck as a truck driver for pay, he would need current license plates and valid title.

22.     Defendants have failed to provide valid title to the Subject Truck or to provide current and valid license plates so that Plaintiff can drive the truck as a truck driver.

23.     Defendants knew that the representations were false when they made them.

24.     Defendants intended its misrepresentations to induce Plaintiff to rely on the misrepresentations.

25.     Plaintiff reasonably relied on the misrepresentations that if he made the required weekly payments, exercised the option to purchase the Subject Truck, and paid the agreed-upon purchase price for the Subject Truck, Defendants would deliver the legal title to the Subject Truck.

26.     Plaintiff acted in reliance upon Defendants' misrepresentations.

27.     Plaintiff was harmed by Defendants' misrepresentations in that he received nothing usable for the purchase price of the Subject Truck.

28.     Defendants' conduct was a substantial factor in causing Plaintiff's harm.

29.     As a direct and proximate result of said complaints, managing agents of Defendants have failed to provide Plaintiff with legal title or current license plates for the Subject Truck so that Plaintiff can drive the Subject Truck for pay.

1

## SECOND CAUSE OF ACTION

2

### (NEGLIGENT MISREPRESENTATION)

3      Plaintiff incorporates the allegations in the preceding paragraphs as though fully set forth

4 herein.

5      30.      Defendants made a material representation to Plaintiff that it would sell a 2016

6 Volvo 670 Commercial Tractor Truck, Serial No. 4V4NC9EH9GN935423 (hereinafter the

7 "Subject Truck") and provide the legal title to the Subject Truck.

8      31.      Defendants' material representations to Plaintiff were not true.

9      32.      Defendants may have honestly believed that the representation was true

10 Defendants had no reasonable grounds for believing the representation was true when

11 Defendants made it;

12      33.      Defendants intended its misrepresentations to induce Plaintiff to rely on the

13 misrepresentations.

14      34.      Plaintiff reasonably relied on the misrepresentations that if he made the required

15 weekly payments, exercised the option to purchase the Subject Truck, and paid the agreed-upon

16 purchase price for the Subject Truck, Defendants would deliver the legal title to the Subject

17 Truck.

18      35.      Plaintiff acted in reliance upon Defendants' misrepresentations.

19      36.      Plaintiff was harmed by Defendants' misrepresentations in that he received

20 nothing usable for the purchase price of the Subject Truck.

21      37.      Defendants' conduct was a substantial factor in causing Plaintiff's harm.

22      38.      As a direct and proximate result of said complaints, managing agents of

23 Defendants have failed to provide Plaintiff with legal title or current license plates for the

24 Subject Truck so that Plaintiff can drive the Subject Truck for pay.

25

26

27

28

1

2

## **THIRD CAUSE OF ACTION**

### (BREACH OF CONTRACT)

3      Plaintiff incorporates the allegations in the preceding paragraphs as though fully set forth

4 herein.

5      39.    Plaintiff and Defendants entered into a contract entitled "Equipment Lease

6 Agreement with Purchase Option" (hereinafter the "Agreement") on September 17, 2018,

7 regarding the lease and option to purchase the Subject Truck.

8      40.    Paragraph 3(b) of the Agreement Plaintiff was required to pay Defendants, as rent

9 for the use of the Subject Truck, the amount of $780.00 per week for a total of 260 payments

10 until the expiration date of the Agreement.

11     41.    Paragraph 5 of the Agreement provides Plaintiff with the right and privilege, at

12 his option to purchase the Subject Truck on the condition that Plaintiff has made all 260

13 payments to Defendants as required under the Agreement.

14     42.    Moreover, Paragraph 5 of the Agreement provides that if Plaintiff exercised this

15 option, Defendants shall duly execute and deliver to Plaintiff all documents necessary and proper

16 to affect the transfer of ownership of the Subject Truck.

17     43.    Plaintiff performed all obligations that the contract required to exercise the option

18 to purchase and purchase the Subject Truck by paying the weekly lease payments and the payoff

19 amount for the Subject Truck.

20     44.    After Plaintiff paid off the Subject Truck, Defendants were obligated to provide

21 Plaintiff with legal title to the Subject Truck.

22     45.    Defendants breached the contract by failing and refusing to provide Plaintiff with

23 full legal title to the Subject Truck after Plaintiff purchased it.

24     46.    Plaintiff was harmed because Defendants failed to provide the legal title to the

25 Subject Truck to Plaintiff.

26     47.    Defendants' breach of contract was a substantial factor in causing Plaintiff's

27 harm.

28

1

## FOURTH CAUSE OF ACTION

2

### (UNJUST ENRICHMENT)

3      Plaintiff incorporates the allegations in the preceding paragraphs as though fully set forth

4  herein.

5      48.    Under Michigan law, the elements of unjust enrichment are: (a) the receipt of a

6  benefit by defendant from plaintiff; and (b) an inequity resulting to plaintiff because of the

7  retention of the benefit by defendant." *See Belle Isle Grill Corp. v. Detroit* (2003) 256 Mich.

8  App. 463, 478, 666 NW2d 271.  Where those elements are satisfied, the law will imply a "quasi-

9  contractual obligation, upon which recovery may be had . . . ." *Morris Pumps v Centerline*

10  *Piping, Inc.* (2006) 273 Mich. App 187, 195; 729 NW2d 898 (quotation marks and citations

11  omitted).

12      49.    Plaintiff conferred benefits upon Defendants purchasing the Subject Truck

13  pursuant to the terms of the Agreement, thereby significantly and materially increasing

14  Defendants revenues and profits and unjustly enriching Defendants at the expense of and to the

15  detriment of Plaintiff.

16      50.    Defendants failed to and continue to fail to deliver all documents necessary and

17  proper, including but not limited to legal title, to affect the transfer of ownership of the Subject

18  Truck to Plaintiff.

19      51.    Defendants' retention of monies paid by Plaintiff to purchase the Subject Truck

20  violated principles of justice, equity, and good conscience.  As a result, Defendants have been

21  unjustly enriched. Plaintiff is entitled to recover from Defendants all amounts that Defendants

22  has wrongfully and improperly obtained. Defendants should be required to disgorge the benefits

23  they have unjustly obtained from Plaintiff.

24      52.    Plaintiff requests the Court enter an order awarding Plaintiff restitution and

25  damages and that he is entitled to recover his reasonable attorneys' fees. Plaintiff, therefore, also

26  seeks pre- and post-judgment interest and attorneys' fees and costs as allowed by statute,

27  including those recoverable under Cal without limitation. Code Civ. Proc. § 1021.5, any common

28  law "private attorney general" equitable doctrine, any "common fund" doctrine, any "substantial

benefit" doctrine, and/or any equitable principles of contribution and/or other methods of awarding attorneys' fees and costs.

### FIFTH CAUSE OF ACTION

### (CONVERSION)

Plaintiff incorporates the allegations in the preceding paragraphs as though fully set forth herein.

53. Plaintiff exercised the option to purchase the Subject Truck and paid the payoff amount, such that Plaintiff owned the Subject Truck at the time of conversion.

54. Defendants substantially interfered with Plaintiff by knowingly or intentionally failing to provide Plaintiff with legal title to the Subject Truck.

55. Plaintiff did not consent to Defendants failing and refusing to provide the legal title to the Subject Truck.

56. Plaintiff was harmed, and Defendants' conduct was a substantial factor in causing Plaintiff's harm.

57. Plaintiff suffered actual, emotional, and consequential damages in an amount determined by the Court according to proof.

58. Defendants' conduct was malicious, oppressive, and fraudulent, warranting punitive damages.

### DEMAND FOR JURY TRIAL

59. Plaintiff MATTHEW D. FALLON hereby demands a trial by a jury of all issues and each and every cause of action alleged herein.

1

**PRAYER FOR RELIEF**

2

WHEREFORE, Plaintiff MATTHEW D. FALLON prays for judgment against

3 Defendants ACCORD XPRESS, INC., a California Corporation, and JAGDEEP SINGH

4 DHALIWAL, a California resident, and each of them, as follows:

5

1.      For general and special damages available in law and according to proof at trial;

6

2.      For an order awarding Plaintiff his costs and attorney's fees incurred in this action

7 according to proof;

8

3.      For prejudgment interest as provided by law; and

9

4.      For all other and further relief to which Plaintiff may be entitled at law or equity.

10

11 Dated: August 25, 2022                              WADE LAW GROUP, APC

12

13                                                     /s/Evan Livingstone
                                                       EVAN LIVINGSTONE
14                                                     Attorneys for Plaintiff
                                                       MATTHEW D. FALLON

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

### EQUIPMENT LEASE AGREEMENT WITH PURCHASE OPTION

EQUIPMENT LEASE AGREEMENT, made and entered into this on September 17, 2018 by and between DF Carriers ("Lessor") and (Lessee). Matthew Darwin Fallon

In consideration of their mutual promises and other valuable considerations, Lessor and Lessee agree as follows:

1.    <u>Lease of Equipment.</u> Lessor hereby leases to Lessee and Lessee hereby leases from Lessor the equipment described in <u>Appendix A</u> attached hereto (the "Equipment").

2.    <u>Term.</u> The term of this Lease shall be for a term of 260 WEEKS, commencing on the date of this Agreement.

3.    <u>Lease Payments.</u>

   a.    <u>Down Payment.</u> Upon execution of this Agreement, Lessee shall pay Lessor the amount of $0.00 as a non-refundable down payment for the lease of the Equipment .$0.00 will be taken out of the weekly settlement for 15 weeks to reach the $0.00 down payment which is non refundable if the lease is not carriers out to the 260 weeks.

   b.    <u>Weekly Lease Payment</u>
   Lessee shall pay Lessor, as rent for the use of the Equipment, the amount of $780.00 per WEEK until the expiration date of this Agreement, together with all such additional charges as may be provided herein. The first lease payment shall be due upon the commencement date of this Agreement with each subsequent payment due on Friday of each week thereafter.The Lessee has already made 156 of the 260 payments as of 9-17-2018 . If Lessee fails to make any or all of the payments specified above within ten (10) days of the due date, Lessee agrees to pay, in addition to all collection costs incurred by Lessor, including reasonable attorney fees, interest on all amounts past due at the rate of one and one-half percent (1.5%) per month or the maximum legal rate allowed by applicable state law, whichever is higher.

   c.    <u>Additional Charges.</u> After delivery of the Equipment, Lessee shall pay Lessor, in addition to the amount specified above, all charges for structural alteration, special equipment, painting, lettering or artwork requested by Lessee. Such charges shall be separately

invoiced and shall be due upon receipt. Lessee shall obtain written authorization from Lessor prior to making any alteration to the Equipment. Lessee shall bear the cost of any modification or additional equipment required to bring the Equipment into compliance with statutory regulations implemented after execution of this Agreement.

d.  Deduction Authorization. Lessee hereby authorizes Lessor to make all arrangements necessary to have all payments set forth herein deducted from Lessee's compensation to be paid by the authorized motor carrier for whom Lessee will be providing transportation services under an Operating Lease Agreement pursuant to Paragraph 6 herein. In the event that the compensation to be paid to Lessee by operating carrier identified in Paragraph 6 is insufficient to pay the amounts owed to Lessor under this Agreement, Lessor may require Lessee to immediately pay to Lessor any additional amount owed.

e.  Offset. Lessee hereby waives any and all existing and future claims, defenses, and offsets against any rent or other payments due hereunder. Lessee agrees to pay the rent and other amounts hereunder regardless of any claim, defense, or offset that may be asserted on its behalf.

4.  . Escrow Amount   Lessee shall pay $0.00 per week until the sum of $0.00, is meet and to be held by Lessor as security for the faithful performance of all terms, covenants, and conditions of this Agreement. The security deposit shall be paid to Lessor by Lessee upon execution of this Agreement.   Upon the expiration or earlier termination of this Agreement, Lessor may utilize the balance of the security deposit to apply to any damages sustained or suffered by Lessor, to bring the Equipment back to acceptable maintenance standards, or to reimburse Lessor for any other expense that is owed by Lessee pursuant to this Agreement. The balance of the security deposit, if any, shall be returned to Lessee within forty-five (45) days of the termination of this Agreement. Upon request, Lessor shall provide Lessee with an itemized statement showing the balance and activity of the security deposit. Lessor shall pay interest on the security deposit in an amount equal to the average yield of 91-day, 13-week treasury bills, as established on the weekly auction by the U.S. Department of Treasury.

5.  Option to Purchase. Provided that Lessee has made all 260 payments to Lessor as required under this Agreement, Lessee shall have the right and privilege, at its option, to purchase the Equipment at the termination date of this Agreement or as otherwise set forth in this Agreement for the amount of $1.00. On the exercise of this option, Lessor shall duly execute

2

and deliver to Lessee all documents necessary and proper to effect transfer of ownership of the Equipment to Lessee, free and clear of all encumbrances, security interests and liens (other than encumbrances, security interest or liens suffered or permitted by Lessee to become effective thereon), upon payment by Lessee in cash or certified check of the agreed price. In addition to payment of the purchase price, Lessee shall, at the time of purchase, pay Lessor for the amount of any unexpired licenses, applicable taxes, and other pre-paid expenses previously paid by Lessor for the Equipment prorated to the date of the sale and Lessee shall be responsible for any sales or use tax arising from the purchase.

6.   **Use and Compliance with Applicable Laws**. Lessee agrees to enter into an Operating Lease Agreement during the term of this Agreement with DF Carriers (the "Operating Carrier") for the purposes of providing transportation services in interstate and/or intrastate commerce pursuant to the Federal Motor Carrier Safety Administration's ("FMCSA") leasing regulations (49 C.F.R. Part 376). In the event that the Operating Lease between Lessee and Operating Carrier is terminated during the term of this Agreement, Lessee shall have the following options: (1) where all 36 rent payments have been made pursuant to Paragraphs 3(b) and 5 of this Agreement, Lessee may exercise the purchase option contained in Paragraph 5 of this Agreement within ten (10) days from the date of such termination; or (2) Lessee may turn in the Equipment to Lessor immediately, in which case the Event of Default and Lessor's Remedies provisions specified in Paragraphs 20 and 21, respectively, shall apply. Lessee shall use the Equipment in a careful and proper manner. Lessee shall not use the Equipment in violation of any foreign, federal, state, territorial, or municipal law or regulation and shall be solely responsible for any fines, penalties, or forfeitures occasioned by any violation thereof while using the Equipment. Lessee shall not operate the Equipment in any manner which would contravene the uses and purposes stipulated in the insurance policies referred to in Paragraph 14 hereof. Nothing herein shall authorize Lessee or any other person to operate the Equipment, or to incur any liability or obligation, on behalf of Lessor.

7.   **Maintenance**.   Lessee agrees to comply with Lessor's maintenance program as set forth in Appendix B during the term of this Agreement. Lessee further agrees to maintain the Equipment in accordance with the regulations of the U.S. Department of Transportation and, subject to the provisions set forth in Appendix B, Lessee shall pay the cost of all maintenance and repairs as are necessary for its safe and efficient operation, including maintenance, inspections, or repairs sufficient to comply with all applicable statutes and government rules and regulations.

8.   **Alteration.** Without the prior written consent of Lessor, Lessee shall not make any alterations, additions, or improvements to the Equipment. Lessor may at its option make such alterations, additions, or improvements as it shall deem appropriate.

9.   **Condition of the Equipment.** Acceptance of the Equipment by Lessee at the time of delivery shall constitute Lessee's acknowledgment that the Equipment is fit for use and is in good, safe, serviceable, and worthy condition. Lessee shall immediately inspect the Equipment delivered pursuant to this Lease, and shall notify Lessor in writing of any defects in the Equipment. If Lessor receives no such written notice within three (3) days after delivery of any item of the Equipment, Lessee will be presumed, as between Lessor and Lessee, to have accepted the Equipment and to be satisfied with the Equipment in such condition and repair.

10.  **Inspection.** Lessor shall have the right to inspect the Equipment upon request and at least once every ninety (90) days at Lessor's place of business.

11.  **Surrender.** Upon the expiration or earlier termination of this Lease, with respect to any item of the Equipment, Lessee shall return the same to Lessor in good repair, condition and working order, ordinary wear and tear resulting from proper use thereof alone excepted, within two (2) days following such expiration or termination.

12.  **Representation and Warranties.** LESSOR MAKES NO WARRANTY OR REPRESENTATION, EITHER EXPRESS OR IMPLIED, AS TO ANY MATTER WHATSOEVER, INCLUDING, WITHOUT LIMITATION, THE VALUE, DESIGN, CONDITION, MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE OR FITNESS FOR USE OF THE EQUIPMENT. Lessee shall lease the Equipment "as is" under this Agreement. Lessee agrees that it has selected the Equipment upon its own judgment and expressly disclaims any reliance upon any statements or representations made by Lessor or any persons on Lessor's behalf. Lessor hereby assigns to Lessee for and during the Lease term all manufacturer's warranties or guarantees, expressed or implied, issued on or applicable to the Equipment and Lessor authorizes Lessee to obtain the customary services furnished in connection with such warranties or guarantees at Lessee's expense. LESSOR SHALL NOT BE LIABLE FOR ANY SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES OF ANY TYPE OR CHARACTER RESULTING FROM THE USE, MISUSE, OPERATION OR MAINTENANCE OF THE EQUIPMENT BY LESSEE.

13.  **Risk of Loss.** Lessee hereby assumes and shall bear the entire risk of loss, theft, destruction, and damage to the Equipment while in its possession,

4

from any cause whatsoever. Occurrence of any such loss or damage shall not relieve Lessee of any obligation imposed under this Agreement.

14. **Insurance.**

    a.    Insurance Policies Purchased by Lessee. Lessee shall secure and maintain in effect throughout the term hereof insurance covering the Equipment and insuring the Equipment against all risk of loss or damage from every cause whatsoever for not less than the full replacement value thereof as determined by Lessor. All of such insurance shall be in the form and amounts and with companies approved by Lessor, and shall be in the joint names of Lessor and Lessee. Lessee shall pay the premium therefor and shall deliver said policies, or duplicates thereof, to Lessor. Each insurer shall agree, by endorsement on the policy issued by it or by independent instrument furnished to Lessor, that it will give Lessor thirty (30) days written notice before the policy in question shall be altered or cancelled.

    b.    Duty of Lessee to Cooperate. In the event of loss or damage to the Equipment, Lessee shall immediately report such loss or damage to Lessor, to the insurance companies underwriting such risk, and to any and all applicable governmental agencies, both federal and state, and shall furnish such information and execute such documents as may be required and necessary to collect the proceeds from the insurance policies.

    c.    Use of Proceeds of Insurance. In the event of, and only to the extent that there is, loss or damage to the Equipment which is covered by the insurance required hereunder, the proceeds of such insurance shall be applied, at Lessor's sole option (a) for the replacement, restoration, or repair of the Equipment, or (b) toward the payment of the Lessee's obligations hereunder. In the event that Lessor elects to apply insurance proceeds to the repair or to the replacement of the damaged Equipment, this Lease shall continue in full force and effect without abatement of rent. In the event Lessor elects to apply insurance proceeds to the payment of Lessee's obligations to pay rent hereunder, the Lessee's obligation for all or part of the rent shall cease only with respect to that part of the Equipment or that piece of Equipment lost or damaged, the amounts of rent so abated in no event to exceed the amount of insurance settlement received by Lessor and to be apportioned equally as reductions in the amounts remaining payable for the balance of the term hereunder.

15. **Lessee's Failure to Maintain Insurance.** In the event Lessee fails to secure and maintain adequate insurance coverage, or to pay taxes, assessments, licenses, fees, or other similar charges, all as hereinabove specified, Lessor may, at its option, effect such insurance, or pay such taxes, assessments, licenses, fees or other similar charges, as the case may be. In such event, the cost thereof shall be payable by Lessee to Lessor as additional rent with the next installment.

16. **Lessee's Indemnity.** Lessee agrees as part of the consideration for this Lease, to indemnify and save harmless Lessor and its successors and assigns from and against any and all loss, damage, claims, demands and liability of every nature, including reasonable attorney's fees, arising directly or indirectly from or in connection with Lessee's possession, use or operation of the Equipment, including actions or claims for negligence or strict liability in tort but excluding losses, damages, claims, demands, or liabilities arising out of Lessor's intentional or grossly negligent acts.

17. **Taxes.** Lessee shall keep the Equipment free and clear of all levies, liens, and encumbrances and shall pay any and all taxes, assessments, license fees, registration fees, and similar charges on or relating to the Equipment, including without limitation, any and all sales taxes, use taxes, excise taxes, personal property taxes, assessments and other governmental fees and charges on or relating to the Equipment, including all such taxes, assessments, fees, and charges upon Lessor by reason of the ownership of the Equipment, and all such taxes, assessments, fees, and charges on the use, rental shipment, transportation, delivery, or operation of the Equipment excepting, however, federal, state, and local net income taxes.

18. **Title to the Equipment.** Lessor shall retain full legal title to the Equipment, and it is understood that the Lessee shall acquire no right, title, or interest to the Equipment, except as expressly set forth in this Agreement.

19. **Assignments and Sublettings.** Lessee shall not assign, mortgage, encumber, or transfer this Lease in whole or in part, or sublet the Equipment or any part thereof, nor grant a license or concession in connection therewith, without the prior written consent of Lessor.

20. **Event of Default.** Any of the following shall be deemed an "Event of Default":

    a. Failure of Lessee to pay any rent installment payment within five (5) days of the date upon which the same becomes due;

    b. Any breach or failure of Lessee to observe or perform any of its other obligations under this Lease, which shall continue for fifteen

6

(15) days after notice in writing to Lessee of the existence of such default;

c.    Abandonment of the Equipment;

d.    Dissolution, liquidation, or termination of the business of Lessee; insolvency or failure of Lessee to pay its debts as they mature in the ordinary course of business; the making of an assignment for the benefit of the creditors of Lessee; the filing of a voluntary petition in bankruptcy by Lessee; the filing of a petition or answer by Lessee seeking a reorganization, arrangement, composition, readjustment, liquidation, or other relief of the same or different kind under any provisions of the federal bankruptcy laws or any other provisions of the federal bankruptcy laws or any other applicable insolvency law or statute; the adjudication of Lessee as a bankrupt or insolvent; the appointment of a trustee, receiver, guardian, conservator or liquidator of Lessee with respect to all or substantially all of its property; the filing of an involuntary petition in bankruptcy against Lessee, or the filing of a petition against Lessee seeking a reorganization arrangement, composition, readjustment, liquidation, or other relief of the same or different kind under any provision of the bankruptcy laws or any applicable insolvency law or statute, and the failure of Lessee in good faith to commence promptly and pursue diligently action to dismiss such petition;

e.    The taking by any party of the Equipment, or any part thereof, upon foreclosure, levy, execution, attachment or other process of law or equity enforced against Lessee;

f.    If, in Lessor's reasonable opinion, Lessee has neglected, abused or misused the Equipment in any way; or

g.    If the Operating Lease Agreement between Lessee and the Operating Carrier is terminated by either party for any reason.

21.    **Lessor's Remedies.** Upon the occurrence of any Event of Default, Lessor may, at is option, in addition to any other remedy or right it has hereunder or by law:

a.    Declare the entire amount due hereunder immediately due and payable without notice or demand to Lessee;

b.    Recover from Lessee an amount equal to the unpaid balance due and to become due under this Lease;

7

c.     Cause Lessee, at Lessee's expense, to return the Equipment to Lessor at a point in the United States designated by Lessor, or Lessor, through its employees, agents or attorneys, may enter upon the premises where the Equipment is located and take immediate possession of the same without demand or legal process and need of all rights of Lessee, in which case Lessee authorizes Lessor or its agents to enter upon any premises where the Equipment may be found for the purpose of repossessing the same, and Lessee specifically waives any right of action it might otherwise have arising out of such entry and repossession whereupon all rights of Lessee in the Equipment shall terminate immediately. No such retaking of possession shall constitute a termination of this Lease unless Lessor so notifies Lessee in writing;

d.     Terminate this Lease and retain all prior payments of rent and retake possession of the Equipment as hereinbefore provided; or

e.     Pursue any other remedy it may have at law or equity.

22.    **Lessor Expenses.** Lessee shall pay Lessor all costs and expenses, including attorney's fees, incurred by Lessor in exercising any of its rights or remedies hereunder or enforcing any of the terms, covenants, or conditions hereof.

23.    **Authority to File.** Lessee authorizes Lessor to prepare and file a financing statement, or any other documents which Lessor elects to file, with respect to the Equipment and this Lease signed only by Lessor. Lessor and Lessee specifically intend this transaction to be a true lease, and it is expressly agreed and understood that neither this provision nor any other provision of this Lease or any filing with respect to it is intended to make it a security agreement. Rather, any such filing by Lessor is intended solely for Lessor's protection in the event of a determination contrary to the intentions expressed in this paragraph.

24.    **Notices.** Any notices to be given hereunder shall be deemed sufficiently given when in writing and when (a) actually served on the party to be notified or (b) placed in an envelope directed to the party to be notified at the following addresses and deposited in the United States mail by certified or registered mail, postage prepaid:

a.     If to Lessor:  DF Carriers 28745 Wick Road , Romulus , Michigan , 48174.

b      If to Lessee Matthew Darwin Fallon ██████████████████ , Fort Mitchell , Al. 36856 such addresses may be changed by either party by written

8

advice as to the new address. Each party shall be under a continuing duty to provide a correct address to the other.

25. **Entire Lease**. This Lease contains the entire understanding among the parties and supersedes any prior understandings and agreements among them respecting the subject matter of this Lease.

26. **Parties' Obligations Binding**. This Lease shall be binding on and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors, and assigns where permitted by this Lease.

27. **Lease and Counterparts**. This Lease and any amendments hereto may be executed in several counterparts and when executed shall constitute one agreement binding upon all of the parties hereto, notwithstanding that all are not signatories to the original or the same counterpart.

28. **Nonwaiver**. No waiver of any term, covenant, or condition of this Lease shall be valid unless in writing and signed by the party or person to be charged. Forbearance or indulgence by Lessor in any regard whatsoever shall not constitute a waiver of the term, covenant, or condition to be performed by Lessee to which the same may apply, and until complete performance by Lessee of any term, covenant, or condition, Lessor shall be entitled to invoke and remedy available to Lessor under this Lease or by law or in equity despite said forbearance or indulgence.

29. **Applicable Law**. This Lease and the rights of the parties hereunder shall be interpreted in accordance with the laws of the State of Michigan , and in the event of any disagreement, the laws of this state shall apply and suit must be brought in Michigan

30. **Severability**. If any one or more of the provisions contained in this Lease shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, and unenforceability shall not affect any other provision hereof, and this Lease shall be construed as if such invalid, illegal, or unenforceable provision had ever been contained herein.

*[Signatures On Next Page]*

**IN WITNESS WHEREOF**, Lessor and Lessee have executed this Lease as of the date first above written.

**LESSOR  DF Carriers**

Address: 28745 Wick Road , Romulus  , Michigan , 48174

Phone:  313-486-0006

Fax:    313-416-1570

Kevin Main
Its:    Manager

Address: 28745 Wick Road , Romulus  , Michigan , 48174

Phone:  313-486-0006

Fax:    313-416-1570

10

LESSEE


By:   Matthew Darwin Fallon


Address: ████████████████ Fort Mitchell , Al. 36856

Mailing Address (SAME)

Fax:

Phone:

Cell Phone: ████████████

E-Mail: ████████████████

SSN: ████████

## APPENDIX A

### EQUIPMENT SCHEDULE

| VEHICLE NUMBER | TERM (# OF WEEKS) | MAKE | YEAR | MODEL | SERIAL NUMBER | AGREED VALUE | DOWN PAYMEI |
|---|---|---|---|---|---|---|---|
| 758 | 260 | volvo | 2016 | 670 | 4V4NC9E H9GN935 423 | $202,800.00 | $0.00 |

By:   KEVIN MAIN

Printed:

Date: 09-17-2018

LESSEE  Matthew Darwin Fallon

Printed:

Date: 09-17-2018

**APPENDIX B**

**Maintenance Program**

The parties agree that the following terms and conditions shall apply with respect to the service, maintenance and inspection of the Equipment identified in Appendix A herein:

1. Lessee agrees, at its sole cost and expense, to service, maintain and repair the Equipment at a facility specifically approved by Lessor during the term of this Agreement. Lessee further agrees to maintain the Equipment in accordance with the regulations of the U.S. Department of Transportation, and to cause its drivers to check tire inflation, oil, coolant and other fluid levels each day. Lessee shall be responsible for all damage or additional maintenance to the Equipment which results from Lessee's failure to adequately service the vehicle or to perform the daily inspection. Lessor shall not have any responsibility for the cost or expense involved in maintaining, servicing or repairing the Equipment except as set forth below.

2. In the event the Equipment shall be disabled for any reason, Lessee and/or its driver shall immediately notify Lessor. Lessee agrees that it will not cause or permit any person other than Lessor or persons authorized by Lessor to make any repairs or adjustments to the Equipment, and shall abide by Lessor's directions concerning emergency repairs.

3. Lessee is responsible, without limitation, for all loss or damage to the Equipment caused by careless or abusive handling by Lessee or a driver employee of Lessee, and Lessee further agrees to defend, indemnify and hold Lessor harmless from all loss, liability and expense, including attorney fees, on account of injury or death to any person or damage to property not covered or payable in full under the insurance coverage required to be procured by Lessee under this Agreement, notwithstanding Lessor's proven negligence or other proven fault.

4. The following costs and expenses shall be charged to Lessee or, as authorized above, deducted from Lessee's maintenance escrow fund, for any maintenance, service or repair work performed by Lessor, any affiliated company of Lessor, or any authorized outside vendor authorized by Lessor:

   a) All parts, including tires, provided at a maintenance facility operated by Lessor or any affiliated company of Lessor shall be charged to Lessee at cost plus ten percent (10%). All labor at a maintenance facility operated by Lessor or any affiliated company of Lessor shall be charged to Lessee at the hourly rate posted at each such facility.

13

b)   All parts and labor provided by an approved outside maintenance facility shall be charged to Lessee at the facility's cost plus a Ten Dollar ($10.0) administrative fee for each repair invoice.

c)   Lessor reserves the right to subcontract maintenance, service and repair for the Equipment at Lessor's complete discretion.

LESSOR DF Carriers      LESSEE  Matthew Darwin Fallon
By                     By
Dated -9-17-2018               Dated - 9-17-2018

14